| | |
|---|---|
| 1 | **UNITED STATES DISTRICT COURT** |
| | **NORTHERN DISTRICT OF ILLINOIS** |
| 2 | **EASTERN DIVISION** |

```
 3
       CHEETAH OMNI, LLC,                    )
 4                                           )
                  Plaintiff,                 )
 5                                           )
       vs.                                   )   No. 10 C 6306
 6                                           )
       VERIZON SERVICES CORP.,               )   Chicago, Illinois
 7     and TELLABS, INC.,                    )   October 7, 2010
                                             )   9:00 o'clock a.m.
 8                Defendants.                )
 9
                    TRANSCRIPT OF PROCEEDINGS - RULING
10             BEFORE THE HONORABLE HARRY D. LEINENWEBER
```

11  <u>APPEARANCES</u>:

```
12     For the Plaintiff:     BROOKS KUSHMAN P.C.
                              MR. ROBERT C.J. TUTTLE
13                            1000 Town Center
                              Southfield, MI 48075
14                            248-358-4400

15                                      and

16                            GREENE & LETTS
                              MR. ALFRED SWANSON
17                            111 West Washington Street
                              Chicago, Illinois 60602
18                            312-346-1100

19
       For the Defendant,     WINSTON & STRAWN
20     Verizon Services       MR. KURT MATHAS
       Corp.:                 25 West Wacker Drive
21                            Chicago, Illinois 60601
                              312-558-9083
22

23     For the Defendant,     SIDLEY AUSTIN LLP
       Tellabs, Inc.:         MR. RICHARD F. O'MALLEY
24                            One South Dearborn Street
                              Chicago, Illinois 60603
25                            312-853-7000
```

1
2
3
4

**FEDERAL OFFICIAL COURT REPORTER**
**MS. KRISTA FLYNN BURGESON**
219 South Dearborn Street
Chicago, Illinois 60604
312-435-5567
krista_burgeson@ilnd.uscourts.gov

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1          THE CLERK:  10 C 6306, Cheetah versus Verizon.

2          MR. O'MALLEY:  Good morning, your Honor.  Rich

3    O'Malley on behalf of Tellabs.

4          MR. SWANSON:  Good morning, Judge.  Alfred Swanson

5    and Robert Tuttle on behalf of Cheetah Omni.

6          MR. TUTTLE:  Good morning, your Honor.

7          MR. MATHAS:  And good morning, your Honor.  Kurt

8    Mathas on behalf of Verizon.

9          THE COURT:  Before the Court is Cheetah Omni LLC's

10   petition for enforcement of a deposition and document subpoena

11   issued by this Court to Tellabs, Inc., and for entry of a

12   protective order.

13         Cheetah and Verizon Services Corp. are currently

14   involved in a patent infringement lawsuit concerning optical

15   communication networks in the Eastern District of Texas.  For

16   this litigation, Cheetah seeks discovery from Tellabs, which

17   manufactures components that Verizon uses in the accused

18   network.  On July 16, 2010, pursuant to Rule 45, Cheetah

19   served Tellabs with a subpoena.  Tellabs served Cheetah with

20   its objections on August 13th.  The parties engaged in

21   negotiations concerning the language of the protective order

22   that would govern Tellabs' disclosures, with the primary

23   sticking points being (1) Tellabs' request that the order

24   include a prosecution bar that includes re-examination

25   proceedings, (2) that this bar would extend 3 years after the

1   litigation, including any appeals, and (3) the prospective

2   remedy in the event of disclosure of confidential information

3   to Dr. Islam.  With Cheetah's expert reports due in the Texas

4   Court by October 15, and the parties unable to resolve their

5   differences, Cheetah filed its petition in this Court.  Both

6   sides have briefed the issue, and on October 5 the parties

7   appeared for arguments.

8           Federal Rule of Civil Procedure 26(c) grants a trial

9   Court with broad discretion to decide the scope of a

10  protective order.  Seattle Times, 467 U.S. at 36.  A Court can

11  limit discovery upon a showing of good cause.  In determining

12  if good cause exists, a Court balances the parties' interests,

13  factoring the harm to the party seeking the order against the

14  importance of disclosure to the nonmoving party.  Bell, 2005

15  WL 289963.

16          The first issue concerning this petition is whether

17  the prosecution bar in the protective order should include

18  re-examination proceedings.  Cheetah argues that because

19  re-examination proceedings prohibit the expansion of patent

20  claims, no risk exists to Tellabs that someone could use its

21  confidential information to inadvertently enlarge claims.

22  Additionally, Cheetah argues that it is "critical" for

23  litigation counsel to participate in re-examinations, for

24  both monetary and legal strategy reasons.  Cheetah cites a

25  case from the Eastern District of Texas in which Judge Love

1   held that the safeguards in the underlying protective order

2   adequately protected the moving party's confidential

3   information, and therefore refused to include re-examination

4   proceedings in the prosecution bar.  <u>Document Generation</u>

5   <u>Corp., 2009 WL 1766096</u>.

6          However, as Tellabs points out, Judge Love did not

7   state that the Court could not include re-examination

8   proceedings in a prosecution bar.  Rather, the Court held that

9   the party seeking the bar had not shown good cause to include

10  it.  Accordingly, Tellabs has the burden to show good cause to

11  include re-examination proceedings in the prosecution bar it

12  seeks to include in the protective order.

13         In the Court's opinion, it has met this burden.

14  Tellabs should not have to worry that its confidential

15  information may be used in a re-examination by Dr. Islam,

16  Cheetah, Cheetah's counsel, or Cheetah's experts.  This is a

17  case in which the prosecution bar should prevent counsel from

18  using confidential information at any stage of patent

19  prosecution, whether this is in drafting, enlarging, or

20  narrowing claims.  <u>Visto Corp., 2006 WL 3741891</u>.

21         As Tellabs successfully argues, not including

22  re-examinations in the bar could potentially allow Cheetah to

23  craft infringement allegations directly around specific

24  elements of Tellabs' products.  Given Tellabs' history with

25  Dr. Islam - in that when he worked with Tellabs on a research

1  project he expressed a strong interest in accessing Tellabs'

2  confidential business and technological information - Tellabs

3  has presented a sufficient rationale why it must take

4  significant precautions to protect its confidential

5  information.  This outweighs any prejudicial effect the bar

6  would have on Cheetah if its counsel could not participate in

7  re-examinations.  Additionally, the Court would not take an

8  unusual or extreme action by barring Cheetah's counsel or its

9  expert from patent re-examinations pertaining to fiber optic

10  networks, as Courts have not hesitated to include such a bar

11  to protect confidential information.  <u>William Wrigley Jr. Co.,</u>

12  <u>2005 WL 146967</u>.

13          The next issue is whether a 3-year bar is an

14  unjustified or excessive period of time.  On September 15,

15  2010, a bipartisan group of 25 U.S. Senators sent a letter to

16  Senator Harry Reid, urging him to schedule a vote on patent

17  reform legislation.  <u>2010 WLNR 18317885</u>.  This letter

18  described the bogged-down patent application process in the

19  United States Patent and Trademark Office, in which an

20  inventor must wait an average of 3 years to obtain a patent.

21  The backlog in the Patent and Trademark Office also affects

22  patent re-examinations.  Subsequently, the one-year

23  prosecution bar Cheetah seeks may not be effective in

24  protecting Tellabs' confidential information, given the

25  lengthy amendment process during patent prosecution.

1  <u>Wrigley, 2005 WL 146967</u>.  A 3-year bar is a reasonable, and
2  proper, duration in this case.

3          Finally, in regard to the prospective remedy in the
4  event of disclosure to Dr. Islam, as Tellabs points out, as
5  long at Cheetah and Dr. Islam abide by the protective order,
6  no reason will exist to invoke the remedy.  As previously
7  stated.  Tellabs has legitimate and reasonable concerns with
8  Dr. Islam obtaining its confidential information.  Therefore,
9  the harsh remedy in the event he obtains Tellabs' confidential
10  information is warranted.

11          Without a proper protective order in place, Tellabs
12  is justified in not wanting to disclose its confidential
13  information to Cheetah's prosecution counsel and expert
14  witnesses.  Therefore, Cheetah's proposed protective order,
15  which does not include the prosecution bar or remedy with
16  respect to Dr. Islam, does not adequately protect Tellabs'
17  confidential information.

18          For the reasons stated above, Cheetah's petition for
19  enforcement of its document and deposition subpoena and for
20  entry of its proposed protective order is denied.  The parties
21  are ordered to agree to and submit a protective order with
22  Tellabs' changes, at which time Tellabs shall comply with
23  Cheetah's document and deposition subpoena.

24          MR. O'MALLEY:  Very good.

25          Thank you, your Honor.

1              MR. MATHAS:  Thank you.

2              MR. SWANSON:  Your Honor, a couple points of

3    clarification.

4              MR. TUTTLE:  With respect to the timing that we have

5    here is it possible, subsequent to the Court's ruling, to

6    proceed with the document production tomorrow, and do the

7    deposition next Tuesday?

8              THE COURT:  I would think so.

9              What would be the delay in getting an order in effect

10   today?

11             MR. O'MALLEY:  Yeah, I don't think there is any

12   problem in getting the order in effect today, your Honor.

13             THE COURT:  I will be here all day, just submit it,

14   and it will be entered.

15             MR. O'MALLEY:  And documents issued tomorrow.

16             But we do need the order today.

17             MR. TUTTLE:  All right.

18             May I ask one other point of clarification?

19             On the prosecution bar, that attaches to Tellabs'

20   confidential information, correct?

21             THE COURT:  Correct.

22             MR. TUTTLE:  It is not an absolute prosecution bar?

23             THE COURT:  It has to do what with what is being

24   produced.

25             MR. O'MALLEY:  Correct.

1            THE COURT:  Right.

2            MR. TUTTLE:  Okay.

3        Thank you, your Honor.

4            MR. O'MALLEY:  Thank you, your Honor.

5            THE COURT:  So you will submit it to my clerk today

6    and I will sign it today, and then you can proceed with the

7    disclosures.

8            MR. O'MALLEY:  Very good.

9        Thank you, your Honor.

10           MR. TUTTLE:  Thank you.

11           (Discussion held off the record.)

12           THE CLERK:  Recalling 10 C 6306, Cheetah versus

13   Verizon.

14           MR. SWANSON:  Good morning again, your Honor.  Alfred

15   Swanson and Robert Tuttle on behalf of Cheetah.

16           MR. O'MALLEY:  Good morning, your Honor.  Rich

17   O'Malley on behalf of Tellabs.

18           MR. MATHAS:  And Kurt Mathas on behalf of Verizon.

19           MR. TUTTLE:  Your Honor, we went straight to work in

20   the Court to try to get common ground on this, and I think we

21   need to have you call balls and strikes.  I think you may have

22   already called this pitch, and that was the prosecution bar on

23   re-examination.  It attaches to confidential information that

24   Tellabs produces under the protective order to be entered.

25           THE COURT:  Right.

1    MR. TUTTLE:  It is not an absolute bar.  If there is

2 a re-examination proceeding which proceeds on patents and

3 printed publications exclusive of Tellabs' information, the

4 bar does not reach to that.

5    MR. O'MALLEY:  And your Honor, the prosecution bar

6 that we submitted is that if litigation counsel reviews

7 confidential information of Tellabs, they can't be involved

8 in a re-examination, because you can't separate their

9 knowledge out from what is or is not known about Tellabs'

10 information.

11    THE COURT:  Why not?

12    I mean, if it doesn't have anything to do with that

13 particular information --

14    MR. TUTTLE:  May I speak, your Honor?

15    THE COURT:  Yes.

16    MR. TUTTLE:  A re-examination request has to be based

17 on either patents or printed publications, documents, and then

18 that goes in and if a substantial new question of

19 patentability is raised, re-examination is granted.  The

20 examination is conducted on patents and printed publications,

21 information accessible to the public.

22    The rule of disclosure in re-examinations defines

23 material information as patents and printed publications.  So

24 it is very probable, and if a re-examination occurred, it

25 would have nothing to do with the Tellabs' information.

1          MR. O'MALLEY:  Your Honor, we are not going to be

2    there with them when they are performing their analysis of the

3    re-examination.  The prosecution bar says litigation counsel

4    can't take part in that process because they can't separate

5    the knowledge that they have from the process of

6    re-examination, the line drawing that takes place in that

7    process.

8          THE COURT:  I still don't see why not.

9          Granted they have some information, but they can't

10   use it.

11         MR. TUTTLE:  We can't use it to broaden the claims.

12         THE COURT:  You can't use it, and --

13         MR. O'MALLEY:  But --

14   Go ahead.

15         THE COURT:  I don't see that was a problem.

16         My intention was to bar the use of any information

17   for the 3 year period.

18         MR. TUTTLE:  And we respect that order.

19         MR. O'MALLEY:  And your Honor, the prosecution bar

20   that we were making a motion for was that litigation counsel

21   that sees this information cannot take part in re-examinations

22   or prosecutions, and they can't leave it up to themselves to

23   decide what is or is not involved in prosecutions and

24   re-examination with Tellabs' information.  They have to get

25   some different patent prosecution lawyers to perform that

1    task.

2            THE COURT:  Maybe you can tell me, how do you enforce

3    these bars?

4            MR. O'MALLEY:  Well --

5            THE COURT:  Suppose we have a bar that is absolute,

6    and they say, To hell with it, and they file for

7    re-examination based on the information in violation of the

8    Court order.

9            Do you come before me, is that what you do?

10            MR. O'MALLEY:  Yes, your Honor.

11            THE COURT:  Why wouldn't you do the same thing?

12            MR. O'MALLEY:  Because they would then be of record

13    be able to -- under what they are proposing, they would be

14    able to participate as of record, and we wouldn't be able to

15    do --

16            THE COURT:  No, no.

17            I mean, if it turns out they are using information,

18    if they are -- let's say that the re-examination is based on

19    something totally unrelated to Tellabs' information, I mean,

20    if there is a question, presumably you would be before me to

21    enforce the bar then?

22            MR. O'MALLEY:  Yes, your Honor.

23            But we wouldn't be able to be taking part in their

24    re-examination processes, and that is why the bar is an

25    either/or.

1      THE COURT:  Well, you would to the extent that you

2  would be asking me to bar them from participating in the

3  re-examination.

4      MR. O'MALLEY:  That is what we just did, yes.

5      MR. TUTTLE:  Your Honor, that is a very harsh remedy.

6      THE COURT:  No, no.

7      I am saying if they actually do -- I mean, let's just

8  make it, as I said, crystal clear.

9      Let's say they go in tomorrow and ask for

10 re-examination, obviously based upon Tellabs' information you

11 would come before me, and then I would sanction them and order

12 them to drop it.

13     MR. O'MALLEY:  Your Honor --

14     MR. TUTTLE:  Your Honor --

15     MR. O'MALLEY:  But your Honor, they could bring a

16 re-examination that they don't say is specifically based on

17 Tellabs' information but, in fact, the information, the

18 technology, could be.

19     THE COURT:  But you could argue that it is, and it

20 would be an issue of fact.

21     MR. TUTTLE:  That is right.

22     And it is a matter of public record that --

23     THE COURT:  It is for the Court to decide.

24     MR. TUTTLE:  Right.

25     What is filed in the re-examination is public record,

1   and would be accessible to them, and more realistically, these

2   patents have priority dates from the early 2000's.  Anything

3   that would qualify as prior art against them is now 7, 8, 9,

4   10 years old.  It would have to be a printed publication or a

5   patent document, which is already accessible to the public.

6           The whole concept of re-examination, when it was

7   introduced 30 years ago in the early 1980's, was that this

8   was supposed to be adjunct to litigation to allow litigation

9   counsel, or the litigators, to avail themselves of the

10  expertise of the Patent and Trademark Office by taking these

11  questions back to them on validity over prior art,

12  constituting patents and printed publications.

13          I just don't think that this is -- what they want is

14  an absolute disqualification of Cheetah's counsel for

15  participation in the re-examination, whether or not it has

16  anything to do with Tellabs.  And Tellabs, the information

17  they see as confidential, I am sure has some freshness or

18  some more immediacy than documents that are some 8, 10 years

19  old.

20          MR. O'MALLEY:  And your Honor, the typical protective

21  order says that you can use it outside of the litigation, so

22  that is what they are saying they won't do, but the

23  prosecution bar goes the next step further and says, We are

24  not going to let them be the arbiters of what it is or is not

25  that they are using the prosecution, or the re-examination, we

1  are going to bar them from prosecuting patents after they

2  view this information, we are going to bar them from

3  re-examinations after they have access to this information.

4        That is the extra step that a prosecution bar goes in

5  these protective orders.

6        THE COURT:  Yes, but it has to be related to -- with

7  the item that is being protected.

8        MR. O'MALLEY:  Yes, optical technology.

9        THE COURT:  I still don't see the problem.

10        If they come up with some totally different reason,

11  let's say you find a written document somewhere that the

12  patent office didn't see that has nothing to do with this

13  subject but has to do with the patent, why couldn't they bring

14  it to the attention of the Patent Office?

15        MR. TUTTLE:  That is our position, your Honor.

16        THE COURT:  And that is my ruling.

17        MR. TUTTLE:  Thank you, your Honor.

18        MR. O'MALLEY:  Thank you.

19        (Proceedings concluded.)

20

21

22

23

24

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/Krista Burgeson, CSR, RMR, CRR      October 7, 2010
Federal Official Court Reporter       Date